**NATIONAL LABOR RELATIONS BOARD, Petiticner,**

v.

**WARREN L. ROSE CASTINGS, INC., d/b/a V & W Castings, Respondent.**

**No. 77–3597.**

United States Court of Appeals, Ninth Circuit.

Dec. 12, 1978.

Elliott Moore, Joseph P. Norelli, Washington, D.C., for petitioner.

A. Patrick Nagel, Irvine, Cal., for respondent.

Before CHAMBERS and HUG, Circuit Judges, and FERGUSON *, District Judge.

HUG, Circuit Judge:

The National Labor Relations Board applies for enforcement of its order requiring Warren L. Rose Castings, Inc. to cease violations of the National Labor Relations Act, and to reinstate employee Michael McMurry with back pay.[1] We find the Board's decision was supported by substantial evidence and direct that the order be enforced.

This case turns principally on resolution of conflicting testimony and raises once again the question of what deference ought to be accorded the Board's findings when those findings constitute a reversal of the findings made by the administrative law judge who actually heard the case.

Among the facts that are not seriously contested are that Rose Castings hired McMurry on May 13, 1976 as a core machine operator and that McMurry was fired October 29, 1976. During this course of time McMurry was absent from work without prior authorization or explanation, on 13 different days. It appears that he was orally warned about unexplained absences in May or June, and again in August.[2] In addition, McMurry was orally warned in August about returning late to work after his lunch breaks. It is not disputed that McMurry never received a written warning of any kind. Also, there is no evidence to suggest that his absences or tardiness increased during the latter weeks of his employment. Rose Castings concedes that McMurry's work product was "very good".

After work on October 28, 1976, McMurry met with a union organizer and obtained some pro-union literature and union authorization cards to distribute to his fellow employees. McMurry reported for work on time, at 7:00 A.M. the next day. He dis-

---

* Hon. Warren J. Ferguson, United States District Judge, for the Central District of California, sitting by designation.

1. The Board's decision and order are reported at 23 NLRB No. 126.

2. On this latter occasion, the reprimand was that McMurry should "at least call us" on the days he was absent. This was the last warning he received on the subject of unexplained absences.

tributed cards at the time he punched in, during his morning break and at lunch time. In addition, two or three times during working hours other employees approached McMurry to discuss the union proposal and McMurry talked with them. On one of these occasions, McMurry was talking to a co-employee outside the washroom when an individual named Danny walked by. Shortly thereafter, Danny conferred with Phillip Puleo, McMurry's foreman, and pointed to McMurry during the conversation. Within an hour, McMurry was summoned to the office of Melvin Maxwell, Rose Castings's vice president. Maxwell handed McMurry a final paycheck and told him he was discharged. Maxwell expressly refused to offer McMurry a reason for the firing. He testified at the hearing that his reason was to teach McMurry a lesson; since McMurry did not inform the company of his absences, the company would not give McMurry a reason for firing him.

There was no testimony to the effect that either Puleo or Maxwell actually witnessed any of McMurry's union activities.

On a number of details, the testimony of witnesses was in conflict. Maxwell said that Puleo reprimanded McMurry for being late about two weeks before the firing, adding that his real motivation for the reprimand was not McMurry's tardiness, but rather his habit of leaving his work area during working hours, to talk to other employees. This was the only evidence suggesting that there was a problem involving McMurry's on-the-job behavior, as opposed to his tardiness and unexplained absences. In direct contrast, Puleo testified that he had only seen McMurry leave his machine one time before the day of the discharge, and that was just one week earlier. Puleo stated that not only did he not reprimand McMurry on that occasion, he never even mentioned the incident. Also, another core machine operator testified that he sometimes left his machine to talk to other employees and had never been warned or reprimanded in this connection.

Puleo had trouble recalling both the time and place of his conversation with Danny. He gave several versions. The administrative law judge credited a version that placed the conversation in Puleo's office at 10:00 or 11:00 A.M. However, Puleo did recall that the subject of the conversation was McMurry's wanderings away from his machine, and recalled that Danny pointed to McMurry at one point. McMurry was not visible from Puleo's office and Danny did not encounter McMurry away from his machine until after lunch, so the conversation must have been not long before McMurry was summoned to Maxwell's office.

The credibility of Maxwell and Puleo was suspect in some other, less directly relevant ways. Both of them recalled that the whole department received a raise in July, while McMurry's recollection was that it came in September. Rose Castings has since conceded that McMurry's recollection was correct. Both Maxwell and Puleo attributed the earlier leniency regarding McMurry's absences to an acute need for manpower during a time of expansion and transition in the work force, yet Maxwell admitted that the work force did not grow appreciably between May and December of 1976. While there may have been considerable turnover, there was no evidence to show a significant decrease in turnover in October or November, such as would tend to explain the sudden strictness of attitude toward McMurry.

The administrative law judge generally credited Maxwell and Puleo, and reached the conclusion that Rose Castings discharged McMurry for job-related reasons, and not out of any anti-union motive. In doing so, he found that there was no evidence to suggest that Rose Castings's management had knowledge of McMurry's union activities. The Board, while noting its "longstanding policy [of] attach[ing] great weight to the credibility findings of an administrative law judge", disagreed. It found that the weight of the evidence, together with inherent probabilities and reasonable inferences, established that Rose Castings, through Maxwell and Puleo, did know of McMurry's union activities. This

finding, taken together with the inconsistencies in the testimony, the failure of Rose Castings to warn McMurry or even mention to him that he should not leave his work area, and Maxwell's refusal to give McMurry a reason for the discharge, convinced the Board that Rose Castings's proffered explanation was "pretextual". The Board concluded that McMurry was fired because of his union activities, in violation of § 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(3).[3]

■ The precise question before us is whether the findings of the Board are supported by substantial evidence, in the record considered as a whole. 29 U.S.C. § 160(e–f). The findings of the Board must be accepted if supported by substantial evidence, and the standard of review does not change simply because the Board has disagreed with the administrative law judge. *NLRB v. Pacific Grinding Wheel Co., Inc.*, 572 F.2d 1343 (9th Cir. 1978).

■ It is obvious that where, as here, motive is the central issue, the fact finder must often rely heavily on circumstantial evidence and inferences. Only rarely will there be probative direct evidence of the employer's motivation. *Shattuck-Denn Mining Corp. v. NLRB*, 362 F.2d 466 (9th Cir. 1966). It is a well-established rule that in such cases the Board is free to draw inferences from all the circumstances, and need not accept self-serving declarations of intent, even if they are uncontradicted. *NLRB v. Pacific Grinding Wheel, supra; Shattuck-Denn Mining Corp. v. NLRB, supra.*

■ Having thus stated the rules that bind us, it requires no exhaustive discussion of the record to support our decision to affirm the Board. The crucial findings were that Rose Castings's management knew of McMurry's union activities and fired him because of them. The fact that McMurry was fired the very day he started

his union activities, when no tardiness or absence or other infraction of company rules occurred, by itself, strongly supports this finding. When this is added to other facts clearly established below—Rose Castings's leniency on past occasions of tardiness or absence, the absence of any significant past occurrences of the specific behavior cited by Rose Castings as its reason for firing McMurry, the refusal to explain to McMurry the reason for his discharge, and the conversation about McMurry between his foreman and an employee who had just overheard McMurry talking about a unionization move, just an hour before McMurry was fired—clear support for the Board's findings emerges.

There was no incontrovertible proof that Rose Castings's management knew McMurry was trying to organize the employees or that it held anti-union feelings. Nevertheless, considering the whole record and all the circumstances, the inference that McMurry was fired because of his union activities is rather compelling. There was clearly substantial evidence in support of the Board's determination.

■ One feature of this case deserves separate attention. Here the Board effectively reversed the administrative law judge, and this raises the question of how to weigh these contradictory findings. It is worthwhile to reiterate that this situation does not alter the basic rule that it is the findings of the Board, not the administrative law judge, which are under review and to which we must apply the substantial evidence test as outlined above. *NLRB v. Pacific Grinding Wheel, supra.* The administrative law judge's findings must be viewed only as a part of the record. When the findings of the administrative law judge are contrary to the Board's findings, this must necessarily detract from the support underlying the Board's findings, but it does not alter the basic standard of review.

3. As relevant here, § 158(a)(3) reads:
"(a) It shall be an unfair labor practice for an employer—. . .
(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization . . . ."

See *NLRB v. Tomco Communications, Inc.*, 567 F.2d 871 (9th Cir. 1978); *Penasquitos Village, Inc. v. NLRB*, 565 F.2d 1074 (9th Cir. 1977); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).[4]

We have considered the findings of the administrative law judge, together with other evidence considered by the Board, and we find that the decision of the Board is well supported by the evidence.

The order shall be enforced.

---

**4.** In *Universal Camera*, the Supreme Court put it this way:

"The 'substantial evidence' standard is not modified in any way when the Board and its examiner disagree. We intend only to recognize that evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion." (340 U.S. at 496, 71 S.Ct. at 469).