**James DYCUS, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

and

**Joint Council of Teamsters No. 42, IBTCWHA, Miscellaneous Warehousemen, Drivers & Helpers Local 986, IBTCWHA, and General Warehousemen Local 598, IBTCWHA, Charging Parties.**

No. 78–2285.

United States Court of Appeals, Ninth Circuit.

Feb. 22, 1980.

David B. Finkel, Los Angeles, Cal., argued for petitioner; Neil M. Herring, Finkel & Herring, Los Angeles, Cal., on the brief.

Andrew Tranovich, argued for respondent.

George A. Pappy, Los Angeles, Cal., argued for Local 42; Pappy, Kaplon & Vogel, Los Angeles, Cal., on the brief.

Paul Crost, Los Angeles, Cal., argued for Local 598; Reich, Adell & Crost, Los Angeles, Cal., on the brief.

Before KENNEDY and HUG, Circuit Judges, and SOLOMON, District Judge.*

HUG, Circuit Judge:

James Dycus petitions this court for review of the order of the National Labor Relations Board dismissing the unfair labor practice complaint issued against Local 598, Local 986 and Joint Council 42, all labor organizations affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("the Teamsters Union"). The Board concluded that the charged parties did not violate section 8(b)(1)(A) of the National Labor Relations Act by transferring jurisdiction over the bargaining unit of which Dycus was a member from Local 598 to Local 986. The Board additionally decided that neither Local 598 nor Local 986 breached a duty of fair representation by failing to process Dycus's grievance against his employer.

The Board properly construed and applied the provisions of the Act, and its findings are supported by substantial evidence. We affirm.

## I.

Dycus was employed by Grinnell Fire Protection Systems Company, Inc. ("Grinnell"), or its predecessor, from 1959 until Dycus was discharged on March 18, 1975. Grinnell designs, manufactures and installs fire protection equipment. For the four years preceding his discharge, Dycus worked at Grinnell's toolroom in Los Angeles as tool repairman, shipping clerk, stock clerk, and occasionally as truck driver.

Dycus joined Local 598 in 1959 and was represented by that union local until the transfer of jurisdiction over his bargaining unit in 1974. In August, 1973, Local 598 signed a collective bargaining agreement with Grinnell covering Dycus's bargaining unit through April 30, 1976.

As a member of Local 598, Dycus was often an outspoken critic of union policies and administration. In or around June, 1974, Dycus announced his intention to run as an opposition candidate for the office of secretary-treasurer in the union elections for Local 598 to take place in November, 1974.

On September 11, 1974, in conjunction with the efforts of Local 986 to organize firefighters, Local 986 requested that Joint Council 42 transfer jurisdiction over the bargaining unit of which Dycus was a member from Local 598 to Local 986. An officer of Local 598 agreed to the transfer without seeking the consent of the members affected by it.[1] On October 3, 1974, the Joint Council approved the transfer.

Dycus protested the transfer and appealed the Joint Council's decision to the International President of the Teamsters Union. On November 24, 1974, Local 598 declared Dycus ineligible as a candidate for the office of secretary-treasurer because he was no longer a member of that union local. Dycus appealed his disqualification. On December 3, 1974, the International General Executive Board of the Teamsters Union denied both appeals lodged by Dycus. Further appeal by Dycus was rejected in February, 1975.

Although Local 986 urged Dycus to join that local, Dycus declined to fill out and return an application for union membership. In January, 1975, however, Dycus directed Grinnell to substitute Local 986 for Local 598 on his union dues check-off authorization form. On January 29, 1975, the company sent to Local 986 Dycus's union dues for the period from November, 1974 through January, 1975.

On March 4, 1975, Dycus sent a telegram to Local 986 inquiring whether Local 986

---

* The Honorable Gus J. Solomon, Senior Judge, District of Oregon, sitting by designation.

1. Neither the ALJ nor the Board found it necessary to make a definite finding with respect to the size of the bargaining unit of which Dycus was a member. It appears from the record that Dycus was either a constituent of a two-person unit or was the sole member of a single-person unit voluntarily recognized by Grinnell and Local 598.

was still interested in representing Dycus, and requesting an immediate reply. On the same day, Dycus sent a second telegram to another union local inquiring about membership and stating that he felt that he was free to join that local. Officers of Local 986 saw both telegrams. Because Dycus had declined to apply for membership in Local 986, and in light of the telegram sent to the other local, Local 986 notified Grinnell on March 4, 1975 that it disclaimed any interest in representing Dycus. Local 986 returned the dues that Grinnell had forwarded on behalf of Dycus.

On March 18, 1975, Grinnell severed Dycus from its payroll in reaction to a downturn in business and a reorganization of the toolroom worksite which eliminated Dycus's primary duties. Dycus has not worked for Grinnell since that time. Dycus challenged his discharge as a violation of the seniority clause of the collective bargaining agreement; he asserted that he was qualified to perform the jobs of less senior employees retained by Grinnell. Dycus's attorney requested assistance from counsel for Local 598 and Local 986 in obtaining Dycus's reinstatement. Dycus was informed that neither union local intended to process his grievance. No written grievance was filed by any party.

Dycus filed unfair labor practice charges with the Board, and the Board issued a complaint charging Joint Council 42, Local 598 and Local 986 with violations of section 8(b)(1)(A) of the Act. The complaint alleges that the charged parties illegally transferred jurisdiction over Dycus's bargaining unit, and that each union local breached a duty of fair representation by failing to process Dycus's grievance with Grinnell.

The Administrative Law Judge ("ALJ") absolved the union locals from liability for their refusal to process Dycus's grievance, because Dycus had failed to file a formal written grievance himself. Additionally, the ALJ found no illegal motive for the agreement to transfer. The ALJ concluded, however, that the attempted transfer of representation authority without the consent of the members of the bargaining unit,

ultimately leaving Dycus without representation, illegally restrained Dycus in the exercise of his rights under section 7 of the Act. The ALJ recommended that Local 598 be ordered to reinstate Dycus as a full member of the local upon Dycus's request.

A divided panel of the Board dismissed the entire complaint. *Joint Council of Teamsters No. 42*, 235 N.L.R.B. No. 156 (1978). On the ground that each local had validly disclaimed any interest in representing Dycus before the date of his discharge, the Board affirmed the ALJ's dismissal of the allegations of the complaint charging breaches of the duty of fair representation. With respect to the transfer of jurisdiction over Dycus's bargaining unit, the Board affirmed the ALJ's finding of an absence of improper motive, and upheld the transfer as an internal union matter. Member Jenkins dissented, stating that he would affirm the ALJ's finding that the charged parties violated the Act by attempting to transfer representation authority without the consent of the members of the bargaining unit.

Dycus has petitioned for review of the Board's order pursuant to section 10(f) of the Act. This court granted the motions of Joint Council 42 and the union locals to intervene on appeal.

II.

Section 7 of the Act provides:

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8(a)(3).

29 U.S.C. § 157. Section 8(b)(1)(A) makes it an unfair labor practice for a labor organization to restrain or coerce

employees in the exercise of the rights guaranteed in section 7: *Provided,* That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein.

29 U.S.C. § 158(b)(1)(A).

The chief object of section 8(b)(1)(A) is the protection of employees from restraint or coercion in their choice of bargaining representatives. *See NLRB v. Allis Chalmers Manufacturing Co.,* 388 U.S. 175, 184–97, 87 S.Ct. 2001, 2008–2015, 18 L.Ed.2d 1123 (1967). That section is not intended to interfere with the purely internal affairs of labor organizations. *Id.* at 195, 85 S.Ct. at 2014; *NLRB v. Retail Clerks Local 1179,* 526 F.2d 142, 144–45 (9th Cir. 1975). The Supreme Court has held that section 8(b)(1)(A)

> leaves a union free to enforce a properly adopted rule which reflects a legitimate union interest, impairs no policy Congress has imbedded in the labor laws, and is reasonably enforced against union members who are free to leave the union and escape the rule.

*Scofield v. NLRB,* 394 U.S. 423, 430, 89 S.Ct. 1154, 1158, 22 L.Ed.2d 385 (1969) (upholding union's imposition of fine upon union member).

This case requires us to determine whether the Board correctly concluded that the transfer of jurisdiction over Dycus's bargaining unit was noncoercive and was an internal union matter protected by the proviso to section 8(b)(1)(A). On review, the Board's findings of fact are conclusive if supported by substantial evidence on the record considered as a whole. 29 U.S.C. § 160(f); *see Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

Dycus initially argues that the transfer of jurisdiction over his bargaining unit was intended to prevent him from running for office in Local 598 and to suppress his dissident activities. He asserts that the transfer was not approved in compliance with the constitution of the Teamsters Union, indicating that the whole transfer scheme was a sham.

The Board affirmed the ALJ's findings that the transfer was approved in accordance with union regulations and was motivated by legitimate business considerations relating to effective union organization and representation. In making those findings, the ALJ resolved conflicts in testimony largely by rejecting Dycus's testimony as speculative and by crediting the opposing testimony of other witnesses. The findings of the ALJ based in part upon credibility are entitled to special weight, although the Board is free to draw its own inferences from credited testimony or other evidence. *Loomis Courier Service, Inc. v. NLRB,* 595 F.2d 491, 495–96 (9th Cir. 1979); *NLRB v. Warren L. Rose Castings, Inc.,* 587 F.2d 1005, 1008–09 (9th Cir. 1978); *NLRB v. Pacific Grinding Wheel, Inc.,* 572 F.2d 1343, 1347 (9th Cir. 1978); *Penasquitos Village, Inc. v. NLRB,* 565 F.2d 1074 (9th Cir. 1977). Our review of the record reveals that the Board's finding that the transfer was executed for legitimate reasons is supported by substantial evidence.

Dycus also contends that, regardless of the purpose of the transfer, the ALJ correctly found that the attempted transfer of representation authority without the consent of the members of the bargaining unit restrained Dycus in the exercise of his right freely to choose his collective bargaining representative. The Board majority rejected this argument on the theory that the transfer in effect constituted both a valid disclaimer by Local 598 of further interest in representation of Dycus's bargaining unit and a noncoercive offer by Local 986 to assume the role of representative.

The question presented concerns the proper application of the general provisions of the Act to a specific and rather unusual fact situation. The function of striking the balance between the prohibitions of section 8(b)(1)(A) and the proviso to that section in a manner designed to effectuate national labor policy is one which Congress has committed primarily to the Board, subject to limited judicial review. *See NLRB v. Iron*

*Workers Local 103,* 434 U.S. 335, 350, 98 S.Ct. 651, 660, 54 L.Ed.2d 586 (1978) (Board's construction of section 8(a)(5), (b)(7)(C) & (f) of the Act is entitled to considerable deference); *NLRB v. Erie Resistor Corp.,* 373 U.S. 221, 235–37, 83 S.Ct. 1139, 1149–1150, 10 L.Ed.2d 308 (1963). We are persuaded that the majority decision of the Board represents the proper application of federal labor law to resolve a somewhat novel issue upon which the caselaw of the federal courts sheds little light.

 An exclusive bargaining agent may avoid its statutory duty to bargain on behalf of the unit it represents by unequivocally and in good faith disclaiming further interest in representing the unit. *See, e. g., Corrugated Asbestos Contractors, Inc. v. NLRB,* 458 F.2d 683, 686–87 (5th Cir. 1972); *IBEW and Local 59, IBEW (Texlite, Inc.),* 119 N.L.R.B. 1792, 1798–99 (1958), *enf'd,* 266 F.2d 349 (5th Cir. 1959); *IBEW and Local 58, IBEW (Steinmetz Electrical Contractors),* 234 N.L.R.B. No. 106 (1978). A disclaimer will not be given effect if it is inconsistent with the union's conduct, *see Texlite,* nor if it is made for an improper purpose, such as the evasion of the terms and obligations of a collective bargaining agreement, *see East Manufacturing Corp.,* 242 N.L.R.B. No. 5 (1979).

 The Board's finding that Local 598 validly disclaimed interest in representing Dycus's bargaining unit is supported by substantial evidence. The agreement by Local 598 to transfer jurisdiction of the bargaining unit to Local 986 constituted an unequivocal disclaimer, and the record supports the conclusion that Local 598 did not disclaim for an improper purpose.[2]

 The record also supports the Board's finding that Local 986 did not seek to force its representation upon Dycus. Local 986 urged Dycus to become a member of that local but it sought to disclaim interest in representing Dycus when Dycus refused unequivocally to accept Local 986 as his representative. After Local 598's disclaimer and the attempted transfer, Dycus was free to accept any willing labor organization as his representative or to remain unrepresented.

 Where there is an attempt to substitute a new employee representative for the existing certified representative without an election or continuity of representation, a question of representation exists, and the Board will not amend the certification of the bargaining agent, nor will it compel an employer to bargain with the new employee representative. *E. g., Independent Drug Store Owners,* 211 N.L.R.B. 701 (1974), aff'd, 528 F.2d 1225 (9th Cir. 1975) (bargaining duty); *Carriage Oldsmobile Cadillac, Inc.,* 210 N.L.R.B. 620 (1974) (amendment of certification). We find no support, however, for the proposition that the attempt to substitute a new employee representative constitutes an unfair labor practice in the absence of coercive conduct aimed at compelling an employee to accept the new representative. The Board held otherwise in this case, and we agree.

 In sum, the attempted transfer of representation reflected a legitimate union interest, contravened no national labor policy, and was effected in a noncoercive manner. Therefore, the Board properly concluded that the decision to transfer was an internal union matter protected by the proviso to section 8(b)(1)(A).

### III.

Finally, Dycus asks us to set aside the Board's conclusion that neither Local 598 nor Local 986 breached a duty of fair representation by failing to process Dycus's grievance with Grinnell. We affirm the decision of the Board.

---

2. The Board correctly noted that Local 598's withdrawal as bargaining agent did not constitute a breach of the duty of fair representation. That duty is the corollary to a labor organization's power and authority to act as the exclusive representative of a bargaining unit. *Steele v. Louisville & Nashville Railroad Co.,* 323 U.S. 192, 202–204, 65 S.Ct. 226, 232–233, 89 L.E.d

173 (1944); *see Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967). When a labor organization relinquishes its statutory authority to act as the exclusive representative of a bargaining unit, the corresponding duty of fair representation terminates. *See generally Steele,* 323 U.S. at 204, 65 S.Ct. at 232–233.

██ ██ The exclusive bargaining representative of a bargaining unit has a statutory duty fairly to represent all employees within the unit. *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967). A union's breach of the duty of fair representation constitutes an unfair labor practice in violation of section 8(b)(1)(A) of the Act. *Kling v. NLRB*, 503 F.2d 1044, 1046 (9th Cir. 1975). A labor organization that is not the exclusive representative of a bargaining unit, however, owes no duty of fair representation to the members of the unit. *Kuhn v. National Association of Letter Carriers, Branch 5*, 528 F.2d 767, 770 (8th Cir. 1976).

 We have determined that the record supports the Board's finding that Local 598 validly disclaimed its interest in representing Dycus's bargaining unit several months before Grinnell discharged Dycus. Therefore, Local 598 did not represent the unit at the time of the discharge, and Local 598 owed no duty to process Dycus's grievance.

It is not clear whether Local 986 ever assumed the status of exclusive representative of Dycus's bargaining unit. However, we need not reach that question, because the record discloses that Local 986 sought to disclaim any right it had to represent Dycus two weeks before his discharge. Differing inferences may be drawn from the facts in the record with respect to whether Local 986 unequivocally and for legitimate reasons disclaimed all interest in representing Dycus's bargaining unit. If the facts are open to conflicting inferences, however, the derivative inferences drawn by the Board will not be overturned on appeal. *See Universal Camera*, 340 U.S. at 488, 71 S.Ct. at 464; *Graphic Arts Local 280 v. NLRB*, 596 F.2d 904, 907–08 (9th Cir. 1979); *Penasquitos Village*, 565 F.2d at 1079. The Board found a valid disclaimer on the part of Local 986, and we find that substantial evidence supports that finding. Therefore, Local 986 owed no duty to process Dycus's grievance.

## IV.

The petition to set aside the order of the Board is denied.

KENNEDY, Circuit Judge, concurring:

I concur in the result but with reservations, for the rule we set forth here may be at odds with an analogous line of authority. In a somewhat different context the Board and some courts have held a union's disclaimer of representation of a unit during the life of a bargaining agreement is not valid and will not be given effect. *See, e. g., East Manufacturing*, 242 N.L.R.B. No. 5 (1979); *American Sunroof Customcraft, Inc.*, 243 N.L.R.B. No. 172 (1979); *American Sunroof/Customcraft, Inc. v. Teamsters Local No. 665*, No. C–78–2371 SC (N.D.Cal. May 25, 1979). Those cases arose when an employer resisted a new election on the ground that the extant collective bargaining agreement barred the unilateral disclaimer. It is not clear to me that the rule should be different where the employee is the petitioner and asserts that the union has a continuing obligation to afford representation during the life of the contract, at least absent circumstances not present in this case. The result of the instant holding, taken with the above cases, might be that an employer may prevent another union from assuming representation over a unit during the life of the current collective bargaining agreement, yet the individual employee member cannot require the disclaiming union to represent him. That does not seem consistent.

The requirement that a union disclaimer of representation be nondiscriminatory and in good faith may provide sufficient protection to the employee. That ground and the usual deference that we afford to the Board's effort to apply federal labor law to a novel factual setting lead me to concur in the result reached by the court.