967 F.2d 589
 148 L.R.R.M. (BNA) 2320
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
ACE CAB, INC., ABC Union Cab Co., Inc., Vegas Western Cab,
Inc., a North Las Vegas Cab Company, Respondents.
 No. 91-70353.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 9, 1992.
Decided June 25, 1992.
 
 Before ALARCON, CYNTHIA HOLCOMB HALL and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The National Labor Relations Board ("Board") has petitioned for enforcement of its order against Ace Cab, Inc., ABC Union Cab Company, Inc., Vegas Western Cab, Inc., and A North Las Vegas Cab Company, (collectively "Ace Cab"), filed pursuant to section 10(e) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(e). Ace Cab argues that the NLRB's factual findings that Charles Frias, the owner of Ace Cab, threatened employee Pat Panaccione on September 16, 1989, because of his union activities, and caused him to be fired for the same reason, are not supported by substantial evidence. We enforce that portion of the Board's order that requires Ace Cab to cease and desist from practices violating section 8(a)(1) of the NLRA. We deny enforcement of that portion of the Board's order that requires Ace Cab to reinstate Panaccione to his former position and to make him whole for any loss of earning and other benefits resulting from the discharge.
 
 I. Section 8(a)(1) Violation
 
 3
 Section 8(a)(1) of the NLRA, 29 U.S.C. § 158(a)(1), makes it an unfair labor practice for an employer to interfere with, restrain, or coerce employees in the free exercise of their section 7 rights. Section 7, 29 U.S.C. § 157, guarantees employees the right "to form, join, or assist labor organizations ... and to engage in other concerted activities for the purpose of collective bargaining...." The ALJ credited Panaccione's testimony that Frias told Panaccione on September 16, 1989 that he would "get" him because of his union activities and that he would park his cabs before signing a contract with the Union. Accepting the ALJ's credibility findings, the Board affirmed the ALJ's determination that Ace Cab had violated section 8(a)(1).
 
 
 4
 Ace Cab contends that the ALJ erred in crediting Panaccione's version of the September 16th conversation. We will not reject credibility determinations made by the Board "unless a clear preponderance of the evidence demonstrates that they are incorrect." Rayner v. NLRB, 665 F.2d 970, 975 (9th Cir.1982).
 
 
 5
 Ace Cab argues that Panaccione's testimony was inherently incredible because Frias testified that he did not know who Panaccione was at the time of the conversation and would never have made such damning statements in the presence of a stranger. Given Panaccione's prominent role in negotiating the union contract over the previous four months, the ALJ could properly infer that Frias knew that he was speaking to Panaccione. See NLRB v. Warren L. Rose Castings, Inc., 587 F.2d 1005, 1008 (9th Cir.1978) (Board may draw inference from all the circumstances, and need not accept self-serving declarations of intent even if uncontradicted).
 
 
 6
 Ace Cab also contends that inconsistencies between Panaccione's testimony at the hearing and his version of the conversation in his affidavit render his testimony untrustworthy. In his affidavit, Panaccione alleged that Frias initiated the conversation and threatened Panaccione before he said anything. At the hearing, Panaccione testified that he initiated the conversation by apologizing for damaging the cab.
 
 
 7
 We consider the discrepancy regarding the person who initiated the conversation a minor inconsistency. Panaccione's allegations in the affidavit and his testimony are consistent concerning the content of the threats uttered by Frias. Panaccione's testimony was corroborated by former Ace Cab supervisor Wayne Wendt's testimony regarding similar anti-union threats made by Frias. See NLRB v. Del Rey Tortilleria, 787 F.2d 1118, 1122 (7th Cir.1986) (minor conflicts between testimony at the hearing and the affidavits were substantially overcome by the balance of the testimony).
 
 
 8
 Finally, we reject Ace Cab's contention that the ALJ should not have credited Panaccione's version of the facts because the corroborating evidence provided by Lawrence Stadterman was not adverse to his employer's interests and therefore was not entitled to deference. The ALJ explicitly conceded that Stadterman's corroboration of Panaccione's testimony was "slight." Thus, whether or not Stadterman's testimony was entitled to deference, it did not play a significant role in the ALJ's finding that Panaccione's testimony was credible.
 
 
 9
 "Weight is given the administrative law judge's determinations of credibility for the obvious reason that he or she 'sees the witnesses and hears them testify, while ... the reviewing court look[s] only at cold records.' " Penasquitos Village, Inc. v. NLRB, 565 F.2d 1074, 1078 (9th Cir.1977) (quoting NLRB v. Walton Mfg. Co., 369 U.S. 404, 408 (1962)). Reviewing the record as a whole, we conclude that Ace Cab has not proven by a clear preponderance of the evidence that the ALJ's credibility determinations should be rejected.
 
 II. Section 8(a)(3) Violation
 
 10
 Section 8(a)(3) of the NLRA, 29 U.S.C. § 158(a)(3), makes it unlawful to discharge a worker because of union activity. In "mixed motive" cases where there may be both permissible and impermissible motives for discharging an employee, the General Counsel has the initial burden of establishing a prima facie case sufficient to support an inference that union or other protected activity was "a substantial or a motivating factor" in the company's discharge of an employee. NLRB v. Transportation Management Corp., 462 U.S. 393, 400 (1983). Once this is established, the burden shifts to the company to demonstrate by a preponderance of the evidence that the alleged discriminatory discharge would have taken place in the absence of the protected activity. Id.
 
 A. General Counsel's Prima Facie Burden
 
 11
 Ace Cab contends that the General Counsel did not establish a prima facie case of discriminatory discharge because the record does not support the ALJ's findings that Frias threatened Panaccione on September 16th, or that Wendt heard General Manager Ed Schenkel state that Frias said that no contract would ever be signed with the union, and that pro-union drivers should be observed and fired for committing any dischargeable offenses. Ace Cab asserts Wendt was not a credible witness.
 
 
 12
 These contentions lack merit. The Board adopted the ALJ's findings that both Panaccione and Wendt were credible witnesses. As discussed above, Ace Cab has failed to meet its burden of demonstrating by a preponderance of the evidence that the ALJ clearly erred in crediting Panaccione's and Wendt's testimony. This evidence provided prima facie evidence that Panaccione's union activity was a motivating factor in his discharge.
 
 
 13
 B. Preponderance of the Evidence Supports Legitimate Reason For Panaccione's Discharge
 
 
 14
 The ALJ's decision was grounded on the finding that Brooks was instructed to fire Panaccione because of his union activities. We have examined the record as a whole. It does not contain substantial evidence to support the ALJ's finding that Brooks' reasons for discharging Panaccione were pretextual. There is no evidence in the record that would support an inference that Frias instructed Brooks to fire Panaccione.
 
 
 15
 Wendt testified that Schenkel had told Wendt that Frias wanted the supervisors to watch Panaccione and other pro-union drivers and fire them for any dischargeable offense. No evidence was introduced showing that Schenkel or Frias similarly instructed Brooks. Indeed, the uncontroverted record reveals that Brooks refrained from firing Robert Breidenbach, another prominent union organizer, for gambling, a dischargeable offense, shortly before he discharged Panaccione. Breidenbach did not offer Brooks a bribe for his forbearance. This evidence demonstrates that Brooks was not motivated to discharge union organizers because of Frias' anti-union animus.
 
 
 16
 It is clear under existing law that Ace Cab could discharge Panaccione if he committed offenses for which he would have been terminated regardless of his union activity. Transportation Management Corp., 462 U.S. at 400; NLRB v. Searle Auto Glass, Inc., 762 F.2d 769, 773 (9th Cir.1985). The ALJ found that Panaccione had committed one or more traffic violations, including failure to maintain radio contact. Failure to maintain radio contact is a ground for discharge under the company's rules. The undisputed evidence shows that supervisors have total discretion in deciding whether to discharge drivers for various violations; that Brooks was recognized within the company as very strict in imposing discipline; and that Brooks had discharged other drivers for traffic infractions, including violating proper radio procedures, reckless driving, and abuse of company equipment. Brooks testified that in the last year, he had fired approximately 100 drivers for similar infractions.
 
 
 17
 Brooks also testified that he fired Panaccione, not only for these traffic violations, but for offering him a bribe to induce him not to suspend or discharge Panaccione. Panaccione argues that the attempted bribe was just another "toke" or tip to a supervisor for an administrative favor. The record shows that it was a common practice for cab drivers to tip supervisors for favors, such as authorizing an unscheduled day off, or the assignment of a better cab. No evidence was presented that any supervisor accepted money in exchange for overlooking a dischargeable offense.
 
 
 18
 In reasoning that Brooks fired Panaccione for his union activities rather than for Panaccione's traffic violations and attempted bribery, the ALJ relied upon inferences that find no support in the record. The ALJ's determination that the traffic and radio violations would not have warranted discharge or even suspension because Brooks ordered Panaccione to the yard rather than immediately disciplining him is pure speculation. Brooks testified that when he ordered Panaccione to the yard, he was contemplating either suspension or discharge.
 
 
 19
 The ALJ's finding that Brooks solicited or implicitly requested a bribe from Panaccione is not supported by substantial evidence. Panaccione testified that he signalled Brooks to stop at a casino parking lot and that he offered Brooks a bribe. The ALJ's finding that Brooks' reaction to the bribe offer was "disingenuous" is refuted by Panaccione's testimony that Brooks was very upset at the bribe offer.
 
 
 20
 The ALJ based his finding that the firing was pretextual in part on the fact that "Brooks testified ... that when he caught certain drivers gambling on company time, he gave them a second chance ... because they had done favors for Brooks in the past." The ALJ inferred from these circumstances that Brooks had not been upset previously by tipping. The record shows, however, that Brooks did not fire the gambling cabbie because he had previously helped Brooks by volunteering whenever Brooks needed more drivers on a shift. After reviewing the record as a whole, we are persuaded that the ALJ's finding that Panaccione's discharge violated section 8(a)(3) is not supported by substantial evidence.
 
 
 21
 That portion of the Board's order requiring Ace Cab to cease and desist from the practices violating section 8(a)(1) of the NLRA is ENFORCED. We DENY ENFORCEMENT of that portion of the Board's order requiring that Ace Cab reinstate Panaccione to his former position or its equivalent and to make him whole for any loss of pay or benefits resulting from the discharge.
 
 
 22
 ENFORCEMENT GRANTED in part; ENFORCEMENT DENIED in part.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3